**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ARMINDO H.V.,

Petitioner,

v.

TODD BLANCHE, Attorney General, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; DAVID J. VENTURELLA, Acting Director of Immigration and Customs Enforcement; DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; and RYAN SHEA, Sheriff of Freeborn County,

Respondents.

Case No. 26-CV-3950 (NEB/EMB)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

This matter is before the Court on Petitioner Armindo H.V.'s Petition for a Writ of Habeas Corpus. (ECF No. 1 ("Pet.").) Armindo H.V. is a citizen of Guatemala who has lived in the United States since 2022 when he entered the country without inspection. (*Id.* ¶ 12.) He has no criminal record. (*Id.* ¶ 13.) He has a pending asylum application and no final order of removal. (*Id.*)

## BACKGROUND

On the evening of July 29, 2026, Armindo H.V. was driving a car with Tennessee license plates in South Dakota. (Pet. ¶ 14.) South Dakota does not require out-of-state

drivers to display a front license plate if their home state does not require a front plate. *See* S.D. Codified Laws § 32-5-46 (2026). In Tennessee, front license plates are neither issued nor required on passenger motor vehicles. *See* Tenn. Code Ann. § 55-4-110(a) (2026). Still, South Dakota Highway Patrol Trooper Knuppe pulled Armindo H.V. over for a traffic stop on the basis that he did not have a front license plate displayed. (Pet. ¶ 14.) Armindo H.V. informed Trooper Knuppe that Tennessee doesn't require front plates. (*Id.* ¶ 15.) The record contains no citation or charge documents resulting from the license-plate issue.

Trooper Knuppe held Armindo H.V. on the side of the road for about three hours.[1] (ECF No. 1-1 at 3-4.) During that time, Trooper Knuppe placed Armindo H.V. inside of a police car and took a photo of Armindo H.V. on a cellphone. (Pet. ¶ 15–16.) Armindo H.V. then observed Trooper Knuppe texting on the cellphone. (*Id.* ¶ 16) An hour later, Trooper Knuppe called Deportation Officer ("DO") Sonnier to conduct a "telephonic alienage interview." (*Id.*) DO Sonnier relayed information gained on the phone call to Supervisory Detention and Deportation Officer VonHaden, who issued a Form I-200 for Armindo H.V.'s arrest. (ECF No. 1-1 at 4.) DO Sonnier called back to inform Armindo H.V. that he was under

---

[1] Armindo H.V. presents arguments about the validity of Trooper Knuppe's authority under an agreement between South Dakota Highway Patrol and ICE referred to as the "§ 287(g) Agreement." (Pet. ¶ 22–26.) The Court does not reach arguments concerning the agreement because relief is warranted on other grounds.

arrest. (*Id.*) Trooper Knuppe transported Armindo H.V. to the Minnehaha County Jail in Sioux Falls, South Dakota for processing. (*Id.* ¶ 19) At this point, no Notice to Appear ("NTA") had been issued.

The next day, Department of Homeland Security ("DHS") officials issued an I-213 and an I-862 Notice to Appear. (ECF Nos. 1-1, 1-2.) DHS transferred Armindo H.V. two more times, once to an ICE facility in Sioux Falls, and a second time to Freeborn Adult Detention Center in Minnesota, where he remains in ICE/DHS custody. (Pet. ¶ 19.) Armindo H.V. filed this habeas action challenging his detention under 28 U.S.C. § 2241.

## ANALYSIS

### I. Validity of Warrant

"Like any federal agency, ICE 'literally has no power to act—including under its regulations—unless and until Congress authorizes it to do so by statute.'" *Luis A.S. v. Easterwood*, No. 26-CV-2447 (PJS/DTS) (D. Minn. May 26, 2026), ECF No. 9 at 2 (quoting *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022)). The Immigration and Nationality Act provides two mechanisms by which "it is appropriate to arrest an alien during the removal process." *Arizona v. United States*, 567 U.S. 387, 407 (2012). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C.

Section 1357(a)(2), ICE has "limited authority" to make warrantless arrests. *Arizona*, 567 U.S. at 408.

Under ICE's regulations, a Form I-200 warrant authorizes a non-citizen's arrest if it is issued "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 236.1(b)(1). In other words, "[ICE] may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA." *Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *2 (D. Minn. June 22, 2026).

Respondents argue that the legality of the arrest does not turn on the sequence in which the I-200 and NTA are issued.[2] (ECF No. 8 at 10.) The language of the regulation is clear—the sequencing matters and an NTA must be issued before a Form I-200. The Form I-200 warrant empowers ICE to arrest noncitizens *during* removal proceedings, and the NTA is what initiates removal proceedings. 8 C.F.R. § 236.1(b)(1); 8 U.S.C. § 1229(a)(1) (stating that ICE "shall" give noncitizens in removal proceedings "written notice" of the proceedings

[2] This Court rejects Respondents' contention that an NTA is never necessary to issue a valid Form I-200 because "the issuance of a Notice to Appear satisfies one avenue for establishing probable cause reflected on Form I-200, but it is not the exclusive avenue." (ECF No. 8 at 11.) The purpose of an NTA is not to serve as the probable cause in a Form I-200. An NTA is the "case-initiating document" in a removal proceeding. *Pedro D.C. v. Blanche*, No. 26-CV-2450 (KMM/DLM), 2026 WL 1759444, at *1 (D. Minn. June 18, 2026) (quotation omitted). There is no replacement for an NTA in these circumstances. A Form I-200 is not valid without one.

in the form of a "notice to appear"). "Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." *Jesus F.D. v. Mullin*, No. 26-CV-2486 (PJS/DTS) (D. Minn. June 10, 2026) ECF No. 10 at 5.

Here, the Form I-200 was issued before the Notice to Appear (ECF No. 7-2 (dated July 29, 2026); ECF No. 1-2 (dated July 30, 2026).) The Form I-200 is invalid, so Armindo H.V.'s arrest was functionally warrantless. *Vladimir G.*, 2026 WL 1786418, at *3.

## II. Statutory Basis for Detention

Courts in this District have repeatedly rejected the argument that Section 1225 detention is justified where the Government's own records reflect detention was initiated under Section 1226. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969 (D. Minn. 2025) (appeal dismissed sub nom. *Escalante v. Bondi*, No. 25-3126, 2025 WL 4698552 (8th Cir. Dec. 5, 2025); *Yonatan P. v. Blanche*, No. 26-CV-2949 (JMB/EMB), 2026 WL 1842652, at *3–5 (D. Minn. June 26, 2026) (ordering release of petitioner whom DHS had previously released subject to conditions under Section 1226); *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under Section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was under Section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same);

*Souleimane C. v. Blanche*, No. 26-CV-2215 (LMP/JFD), 2026 WL 1180075, at *3–4 (D. Minn. Apr. 30, 2026).

Until now, Respondents have purported to detain Armindo H.V. under 8 U.S.C. § 1226. (ECF No. 7-2 (listing 8 C.F.R. § 236 as the animating regulation for issuing the arrest warrant); ECF No. 1-1 at 4 (detaining Armindo H.V. pursuant to an I-200 arrest warrant).) The first and only time Respondents claimed to detain Armindo H.V. under Section 1225(b) is in their amended response. (ECF No. 8 at 2). The Court will hold Respondents to their words and find Respondents detained Armindo H.V. under Section 1226.

## III. Warrantless Arrest

The next question is whether ICE lawfully detained Armindo H.V. without a warrant under Section 1226. Section 1357(a)(2) authorizes an immigration officer to effectuate a warrantless arrest of a noncitizen "if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation *and* is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). Courts construe "reason to believe" to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

This Court agrees with Respondents that Trooper Knuppe had reason to believe that Armindo H.V. was in violation of immigration laws at the time of his arrest because Armindo H.V. made voluntary statements affirmatively stating that he entered the United

States illegally. (ECF No. 1-1 at 3–4.) But as this Court has previously stated, "that admission alone is not sufficient" to serve as the basis of a warrantless arrest. *Jose V.P.R. v. Respondents*, No. 26-CV-3047 (NEB/DLM), 2026 WL 2546265, at *2 (D. Minn. Aug. 28, 2026).

Respondents must also demonstrate the "likely to escape" prong of Section 1357(a)(2). In this context, the legal meaning of "likely to escape" is "likely to evade detention by immigration officers."[3] *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016)); *see also Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"). That analysis centers "not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Jorge Anibal P.P. v. Blanche*, No. 26-CV-3125 (LMP/LIB), ECF No. 7 at 6 (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-CV-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)).

---

[3] Even if this Court agreed that the meaning of "likely to escape" referred to the traffic stop, Respondents rely on a claim that Armindo H.V. was "in complete control of the vehicle" and could leave at any time. (ECF No. 8 at 15.) But Armindo H.V. claims he was placed in Trooper Knuppe's police car during the stop, and not in control of the vehicle. (Pet. ¶ 15.) Respondents provide no proof to the contrary.

Trooper Knuppe could have released Armindo H.V. and later relocated him using the information obtained during the stop, including his home address. *Juan J.M.E. v. Easterwood*, No. 26-CV-2270 (KMM/EMB), 2026 WL 1746672, at *3 (D. Minn. June 8, 2026), *report and recommendation adopted sub nom Juan M.E. v. Easterwood*, 2026 WL 1747756 (D. Minn. June 17, 2026). Moreover, Courts have made the "self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F.Supp. 3d 1, *31 (D.D.C. 2025) (collecting cases). Trooper Knuppe knew that Armindo H.V. had resided in the United States for four years, that he works in construction, and that he has no criminal history. (ECF No. 1-1 at 4.) In addition, Armindo H.V.'s nearly three-hour compliance with Trooper Knuppe's traffic stop is an indicator that Armindo H.V. would not flee. Respondents do not point this Court to any facts suggesting otherwise.

Respondents did not have probable cause to conclude that Armindo H.V. was "likely to escape" when they executed a warrantless arrest. In similar situations when officers violate 8 U.S.C. § 1357(a)(2), courts in this district have ordered immediate release as a remedy. *See, e.g.*, *Ahmed S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *7 (D. Minn. July 10, 2026) (collecting cases). This Court will do the same.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioner Armindo H.V.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is GRANTED;

2. Respondents are ORDERED to release Petitioner from custody by 4:00 PM on September 30, 2026, and he must be released:

   a. Inside the State of Minnesota

   b. At a safe time and place communicated in advance to counsel: James Sampson Dugan; jdugan@zellelaw.com; (415) 633-1913

   c. With all Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys; and

3. Respondents are ORDERED to file a status update with the Court acknowledging the release of Petitioner with his personal effects.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 28, 2026

BY THE COURT:
s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge